# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO.

**JAMES B. WHEAT**                                        **13-12079**
                                                         **SECTION "A"**

**DEBTOR**                                               **CHAPTER 11**

## SECOND AMENDED PLAN OF REORGANIZATION

James B. Wheat, Debtor-in-possession, hereby submits this First Amended Plan of Reorganization ("Plan").

## ht of setofDEFINITIONS

For the purposes of this Plan, including any subsequent amendments or modifications thereto, the following terms shall have the following meanings:

1. "<u>Administrative Expense Claim</u>" shall mean any cost or expense of administration of the Chapter 11 case entitled to priority in accordance with the provisions of Section 503(a)(1) and 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expense of preserving the Debtor's estate, operating the Debtor's business, and all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330 and 503 of the Bankruptcy Code, and any quarterly fees owed the U. S. Trustee through the Effective Date.

2. "<u>Allowed</u>" when used with respect to any Claim, except for a claim that is an Administrative Claim, shall mean any Claim in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court, or in the absence of such filing, as set forth in the Debtor's Schedules of Liabilities filed in this case, unless and except if the Claim was listed as disputed, contingent or unliquidated in the Debtor's Schedules of Liabilities, or as to which an objection to the allowance thereof has been interposed or filed with the Court and such objection has not been determined by an order of the Court providing for the allowance thereof.

3. "<u>Auction Date</u>" shall mean the date on which the property located at 1605 Hudson St., Kenner, Louisiana, is sold at auction free and clear of all Liens.

4. "<u>Bankruptcy Case</u>" shall mean that case entitled *In re James B. Wheat,* currently pending in the United States Bankruptcy Court for the Eastern District of Louisiana bearing case number 11-11574.

5. "<u>Bankruptcy Code</u>" shall mean the Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended.

6. "Bankruptcy Court" or "Court", unless otherwise specified herein, shall mean the United States Bankruptcy Court for the Eastern District of Louisiana.

7. "Cash Escrow Account" or "DIP Account" shall mean the Debtor's Debtor-in-Possession account post-confirmation and into which the Debtor will deposit, post-confirmation and commencing on the Effective Date, the Net Income he receives from his operation of "Mrs. Wheat's Fabulous Foods, Inc.", i.e., his salary from that corporation, including all royalty payments/income and rental payments derived from the Hudson Street Property received by the Debtor during the 5-year post-Effective Date.

8. "Claim" shall mean any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against the Debtor in existence on or as of the Petition Date, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisclosed, legal, equitable, secured or unsecured, as defined in section 101(5) of the Code.

9. "Closing Date" shall mean the date on which the agreements and all documents necessary and required to transfer title of the Hudson Street Property and/or the Harrison County Property, free and clear of all Liens, are executed by the Debtor and the prospective purchasers.

10. "Colonial Club Property" shall mean that certain property bearing municipal address 71 Colonial Club Drive, Harahan, Louisiana 70123.

11. "Confirmation Date" shall mean the date on which the order is entered confirming the Plan.

12. "Consummation of the Plan" shall mean accomplishment of all things contained in or provided for in the Plan.

13. "Creditor" shall mean the holder of a claim against the Debtor as defined in Section 101(10) of the Bankruptcy Code.

14. "Debtor" or "Debtor-in-Possession" shall mean James B. Wheat.

15. "Disclosure Statement" shall mean the Disclosure Statement relating to the Plan, including without limitation, all exhibits, attachments and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

16. "Disputed Claim" shall mean any Claim which is listed as "disputed" in the Debtor's bankruptcy schedules filed of record in this proceeding or any claim as to which an objection has been filed no later than the time fixed by the Court for filing objections to Claims and which objection has not been withdrawn or resolved by the entry of an order by the Court.

17. "Distribution Agent" shall mean the Reorganized Debtor, i.e., James Wheat, who will make the distributions to creditors under the terms of this Plan.

18. "Effective Date" means the thirtieth day after which the (a) Confirmation Order becomes final and non-appealable, (b) Confirmation Order is not stayed, and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

19. "Executory Contract" shall mean any executory contract or unexpired lease to which the Debtor was a party as of the Petition Date, including those listed in the Debtor's Bankruptcy Schedule G, as amended.

20. "Existing Bar Date" shall mean the deadline for filing proofs of claim as previously established by order of the Court, which was January 20, 2014.

21. "Final Order" shall mean an order or judgment (i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired; or (ii) in the event an appeal, writ of certiorari, or motion for reargument or rehearing has been filed, such judgment or order has not been reversed, modified, stayed, or amended.

22. "Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

23. "Government Entity" shall mean a governmental unit (as defined in Section 101(27) of the Bankruptcy Code) with the authority to levy taxes against the Debtor or its property.

24. "Harrison County Property" shall mean that certain immovable (real) property consisting of approximately 90 acres of raw land located in Harrison County, Texas, and in which land the Debtor maintains an overriding royalty interest with NFR Energy, now Sabine Oil, pursuant to an oil and gas lease with NFR Energy.

25. "Hudson Property" shall mean that certain immovable (real) property bearing municipal address 1605 Hudson St., Kenner, Louisiana 70062.

26. "Lien" or "Liens" shall mean any lien, security interest, mortgage, deed of trust, option, judgment, judicial mortgage, lease, tenancy, occupancy, covenant, condition, easement, agreement, royalty, pledge, hypothecation, charge, claim or other encumbrance.

27."Living Expenses" shall mean those monthly recurring expenses of the Debtor for electricity and heating fuels, water and sewer, cable television, home maintenance, food, clothing, laundry, dry cleaning, recreation, life insurance, and auto insurance in the total amount of $2,219.00 per month.

28. "MWFF" shall mean Mrs. Wheat's Fabulous Foods, Inc., a corporation organized and existing under the laws of the State of Louisiana of which the Debtor owns 100% of the stock.

29. "Net Income" shall mean the gross dollar amount of income which the Debtor is paid via a salary by Mrs. Wheat's Fabulous Foods, Inc. ("MWFF") post-Effective Date for the particular

3

month (currently anticipated to be $10,000.00 per month), less the Debtor's Living Expenses and Secured Note Payments.

30. "Petition Date" shall mean July 30, 2013.

31. "Projected Disposable Income" shall mean the term "projected disposable income" as defined in Section 1325(b)(2) of the Bankruptcy Code, and which amount is equal to the "Net Income" as defined in paragraph 29 hereinabove.

32. "Pro Rata" or "Pro Rata Share" shall mean in the same proportion that the amount of any allowed Claim or interest in a class bears to the aggregate amount of all claims or interests in such class, including in such aggregate amount both the allowed claims and any then unresolved Disputed Claims in such class as of the date of any distribution payment pursuant to the Plan.

33. "Rental Income" shall mean that certain income obtained by the Debtor from the rental of the Hudson Street Property.

34. "Sale Escrow Account #1" shall mean that certain checking and/or escrow account into which the Debtor shall deposit all sales proceeds derived from the sale or auction of the Hudson Street Property, after payment of the, the real estate agent's commission or auctioneer's commission associated with the sale of the Hudson Street Property, and any costs or fees required to be paid by the Debtor or as seller of the property in connection with the closing of the sale thereof, and any capital gains taxes arising from the sale of this property, the remaining sales proceeds will be paid to the SBA.

35. "Secured Claim" shall mean a claim, debt or demand against the Debtor as determined pursuant to Section 506 of the Bankruptcy Code which is secured by a properly perfected mortgage, deed of trust, or security interest in any of the real or personal property owned by the Debtor.

36. "Secured Creditor" shall mean a Creditor that holds a Secured Claim.

37. "Secured Note Payments" shall mean those certain monthly note payments under the plan proposed to Wells Fargo in the amount of $6,140.90 per month on the first mortgage held by this creditor on the Colonial Club Property. The Note and/or any amounts due Wells Fargo over and above the Note secured by the first mortgage on the Colonial Club Property, i.e., the second mortgage on the Colonial Club Property, is wholly unsecured by operation of section 506(b) of the Bankruptcy Code.  The Debtor's monthly plan payment to Mercedes Benz is not factored into the "Secured Note Payments" as it is anticipated that this indebtedness will be satisfied on or before the Effective Date of the Plan. The monthly plan payments proposed to Toyota Motor Credit Corporation are also excluded from the "Secured Note Payments" as this indebtedness will be paid by the Debtor's son and co-owner of this vehicle.

38. "Texas Mineral Royalty Interest" shall mean those certain mineral royalty (oil and gas) interests in the following properties by taxing unit, to-wit: (i) 203 Harrison County, Texas, SH Hallsville ISD, M11 Harrison County ESDI, M15 Harrison County ESD5, consisting of 18 wells;

and (ii) 203 Harrison County, Texas, SH Hallsville ISD, M14 Harrison County ESD4, M15 Harrison County ESD5, consisting of six wells.

39. "<u>Unsecured Claim</u>" shall mean any unsecured debt, demand or claim of whatever nature, other than Administrative Claims, Priority Tax Claims, Governmental Claims, or Secured Claims, to the extent as determined and allowed by the court in accordance with Section 502 of the Bankruptcy Code.

## <u>ARTICLE II. GENERAL PROVISIONS OF THE PLAN</u>

**1. Reorganization**.

Within one hundred eighty (180) days from the Confirmation Date of the Plan (unless such time period is further extended by the Court on the request of the Debtor via motion filed within such 180-day post-Confirmation Date period), the Reorganized Debtor shall sell his entire right, title and interest in and to the Hudson Street Property at private sale free and clear of all Liens as contemplated by Section 363 of the Bankruptcy Code. If the sale of the Hudson Street Property does not close within 180 days from the Effective Date, then, in such event, the Debtor will retain and employ Penny Mutz of **SERVCORP INTERNATIONAL, INC., 101 Magnolia Street, Slidell, LA 70460**, as auctioneer, to sell the Hudson Street Property, via auction, free and clear of all Liens. The proposed compensation for the Auctioneer is a 6% buyer's premium with the seller having no expenses other than a pro rata share of advertising. The Sales Proceeds received by the SBA from the sale or auction of the Hudson Street Property, after payment of any real estate agent fee's or auctioneer's fee and any and all capital gains taxes arising from the sale of the Hudson Street Property, shall be deemed to satisfy, in full, the Allowed Secured Claim of the SBA. Again, the Sales Proceeds derived from the sale of the Hudson Street Property shall be remitted to the SBA in full satisfaction of its Allowed Secured Claim in this proceeding. Those other creditors holding liens on the Hudson Street Property will have their liens cancelled and extinguished at the time of the closing of the sale or auction as such lien-claimants are completely unsecured as to the Debtor pursuant to Section 506(a) of the Bankruptcy Code.

The Debtor will also sell his electronics, Jazz posters and jewelry via auction on "E-Bay", within one (1) month of the Effective Date, and the proceeds of which will be utilized to pay creditor claims in accordance with the Plan.

The Debtor will also sell his 50% interest in the Toyota to the other co-owner thereof, his son, with his son assuming the payment of all remaining payments due Toyota Motor Company (i.e., $8,649.00). The Debtor will also sell his 50% interest in the Lexus to his daughter, April Wheat, for the sum of $4,113.00 since the other co-owner of this vehicle has no interest in acquiring same. The proceeds derived from the sale of the Lexus will be deposited into the Cash Escrow Account and utilized to pay creditor claims in accordance with the Plan.

The Debtor will also remit to and deposit (i) 100% of his Net Income, and (ii) 100% of the Royalty Payments, over a period of six (6) years from the Effective Date or for a total of 72 months from the Effective Date, in the Cash Escrow Account.

If and when all Administrative Expenses and Priority Claims have been paid in full, without interest, any remaining monies in the Cash Escrow Account shall be remitted to unsecured creditors on a *pro rata* basis in quarterly payments commencing on the day of the first full month which is at least 60 days after the Effective Date.

### 2.  Projected Disposable Income under the Plan

Pending and subsequent to the sale of the Debtor's Hudson Street Property, whether by private sale or auction, the Debtor shall commence, within 30 days on the Effective Date of the Plan, to deposit 100% of his Net Income and 100% of his Royalty Payments into the Cash Escrow Account each month, and will disburse the balance in that account, at the end of each quarter thereafter, to pay (i) administrative expenses, (ii) priority tax claims or taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code, and (iii) the tax consequences incurred and resulting from the Debtor's sale of the Hudson Street Property. After administrative expenses, priority tax claims and the tax consequences incurred and resulting from the Debtor's sale of the Hudson Street Property have been paid, in full, payments will commence to unsecured creditors or Class 11 creditors under the Plan, which payments will be made quarterly and on a pro-rata basis to such Class 11 claimants.  Deposits into the Cash Escrow Account of 100% of the Debtor's Net Income and 100% of the Debtor's Royalty Payments will terminate six (6) years from the Effective Date, and one final payment will be made to creditors of the balance remaining in that account within thirty (30) days from the end of that six-year post-Effective Date period.

### 3. Classification of Creditors' Claims

The Plan provides for the creation of eleven (11) classes of creditors. Class 1 consists of Administrative Expense Claims and Class 2 consists of governmental agencies to the extent that they are entitled to priority under Section 507(a)(8) of the Bankruptcy Code (i.e., Priority Tax Claims). Class 3 consists of other priority claims other than tax claims under Section 507(a)(8) of the Bankruptcy Code.  Class 4 consists of the Secured Claim of Wells Fargo, to the extent such claim is secured by a first mortgage on the Colonial Club Property.  Class 5 consists of the claim of Wells Fargo to the extent such claim is an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a second mortgage on the Colonial Club Property. Class 6 consists of the claim of the U. S. Small Business Administration ("SBA") to the extent its claim is secured by a first mortgage on the Hudson Street Property and to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a third mortgage on the Colonial Club Property. Class 7 consists of the claim of Diversified Construction to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a mortgage on the Hudson Street Property and mortgage on the Colonial Club Property. Class 8 consists of the claim of Mercedes-Benz Financial USA, LLC, to the extent its claim is secured by a valid security interest in the Debtor's SL500 R Mercedes Benz automobile. Class 9 consists of the

claim of Toyota Motor Credit Corporation to the extent it is secured by a valid security interest in the Debtor's 2008 Toyota automobile. Class 10 consists of the claim of the Sherwin-Williams Company to the extent such claim is an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a judicial mortgage on the Hudson Street Property and on the Colonial Club Property. Class 11 consists of all non-priority Unsecured Claims and the portion of any creditor's claim that is unsecured as determined by or under 11 U.S.C. §506(b).

## ARTICLE III. FUNDING OF THE PLAN

The Debtor's Plan will be funded by utilizing (i) the proceeds generated from the private sale or auction of the Hudson Street Property, free and clear of all Liens, to satisfy, in full, the Allowed Secured Claim of the SBA; (ii) the Debtor's Royalty Payments generated by the Harrison County Property over a period of six (6) years from the Effective Date of the Plan; (iii) proceeds from the sale of the Debtor's Lexus, jewelry and "Jazz-Fest" posters; and (iv) the Debtor's Net Income earned by the Debtor from MWFF over a period of six (6) years from the Effective Date of the Plan.

If a private sale of the Hudson Street Property is not consummated within 180 days after the Effective Date (unless such time period is further extended by the Court on the request of the Debtor via motion filed within such 180-day post-Confirmation Date period), the Debtor will pay the Allowed Secured Claim of the SBA from the sale proceeds generated by an auction of the Hudson Street Property.  Once a total of 180 days have elapsed from the Effective Date, or such further period as extended by the Court on motion of the Debtor, the Debtor will retain and employ Barbara Mutz to auction the Hudson Street Property, and the auction of the Hudson Street Property will be conducted in accordance with that auctioneer's or auction company's terms, conditions and specifications. The Debtor will pay the auctioneer her standard commission and, after payment of that commission, the auction proceeds derived from the Hudson Street Property will be remitted to the SBA in full satisfaction of its Allowed Secured Claim in this proceeding.

On confirmation the debtor will sell his 50% interest in the 2008 Toyota pickup truck to his son, James Bryant Wheat, Jr., and the note payments on this vehicle will be made and remitted by the Debtor's son in the amount of $595.00 each, post-confirmation, until the Allowed Secured Claim of Toyota Motor Credit Corporation is paid in full. This creditor will retain its lien and security interest in the 2008 Toyota Tacoma until its Allowed Secured Claim is paid in full.  No payments will be made to this creditor by the Debtor.

On confirmation the debtor will sell his 50% interest in the 2005 Lexus RX330 Automobile to his daughter, April Wheat, for the price and sum of $4,113.00.

## ARTICLE IV. CLASSIFICATION OF CLAIMS UNDER THE PLAN

The claims of the creditors and/or interests, for purposes of the Plan, shall be classified as follows:

7

1. Class 1 - Class 1 claims include Administrative Expense Claims under Section 503 of the Bankruptcy Code and all payments due the Office of the U.S. Trustee under Section 1930 of Title 28, United States Code. Class 1 administrative expenses total approximately $12,755.58 and consist of attorney's fees and costs of counsel for the Debtor as of April 11, 2014.

2. Class 2 - Class 2 claims include those Unsecured Claims entitled to priority under § 507(a)(8) of the Bankruptcy Code, and which are those taxes, customs and duties owing federal, state and local governmental units. Claims in this class total zero.

3. Class 3 - Class 3 consists of those Unsecured Claims entitled to priority under section 507 of the Bankruptcy Code other than Priority Tax Claims.  There are currently no known claims in this class.

4. Class 4 – Class 4 consists of the Secured Claim of Wells Fargo, the holder of a first or first ranking Mortgage on the Colonial Club Property in the amount of $552,044.99.

5. Class 5 - Class 5 is composed of the Claim of Wells Fargo to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a second or second ranking Mortgage on the Colonial Club Property in the amount of $73,617.11 and its secured status is disputed.

6. Class 6 – Class 6 is composed of the Claim or Claims of the SBA to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a mortgage or a first ranking mortgage on the Hudson Street Property and a mortgage or third ranking mortgage on the Colonial Club Property, in the amount of $1,671,809.77 and its secured status is disputed.

7. Class 7 – Class 7 is composed of the Claim or Claims of Diversified Construction, Inc., to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a mortgage or a second ranking mortgage on the Hudson Street Property and a mortgage or fourth ranking mortgage on the Colonial Club Property. Diversified's claim in this proceeding is in the amount of approximately $240,000.00, and its secured status is disputed.

8. Class 8 – Class 8 is composed of Mercedes-Benz Financial USA, LLC/BK Servicing, LLC ("Mercedes Benz") to the extent it holds an allowed Secured Claim, which claim is secured by a valid security interest in the Debtor's SL500 R Mercedes-Benz automobile, in the amount of $1,000.00.

9. Class 9 – Class 9 is composed of Toyota Motor Credit Corporation to the extent it has an allowed Secured Claim, which claim is secured by a security interest in the Debtor's 2008 Toyota automobile.  The amount of this creditor's claim is $8,649.30.

10. Class 10 - Class 10 is composed of the Claim or Claims of Sherwin-Williams Company to the extent it has an Allowed Secured Claim, pursuant to 11 U.S.C. § 506(b), that is secured by a judicial mortgage on the Hudson Street Property and on the Colonial Club Property.

The Sherwin-Williams Company's claim is in the amount of $2,400.00, and its secured status is disputed.

11. <u>Class 11</u> - Class 11 is composed of the creditors holding general unsecured non-priority claims; any claim that is not classified or is not of a type contained in any class hereinabove; any claim for the rejection of an executory contract or unexpired lease of the Debtor; and the unsecured portion or amount of any claim, as provided or determined in accordance with the provisions of Section 506(b) of the Bankruptcy Code, of a creditor who holds or maintains a security interest, mortgage or lien in any asset of the Debtor. Claims included in this class are the claim of Wells Fargo that is secured by a second ranking or lesser ranking mortgage on the Colonial Club Property, the Class 7 claim of Diversified Construction in its entirety, and the deficiency or remaining portion of the SBA's claim after payment of the sales/auction proceeds thereto from the Hudson Street Property and to the extent the *Debtor's in personam* liability thereto is not satisfied by the sale of the Hudson Street Property. Claims in this Class total approximately $1,996,476.

## ARTICLE V. TREATMENT OF CLAIMS UNDER THE PLAN

The Plan contemplates a private sale of the Hudson Street Property within 180 days of the Effective Date or such period as may be further extended by the Court upon motion and notice to creditors filed by the Debtor. Only in the event a private sale of the Hudson Street Property is not closed within 180 days of the Effective Date or any date thereafter as extended by the Bankruptcy Court, the Hudson Street Property will be sold, at auction. The sales proceeds derived from a private sale or auction of such property, after payment of a real estate agent's or auctioneer's commission as the case may be, including the tax consequences incurred and resulting from the Debtor's sale of the Hudson Street Property, shall be distributed to pay the SBA in full satisfaction of its secured claim in this proceeding. The remaining claims will be paid from (i) the Debtor's Royalty Payments generated by the Harrison County Property over a period of six (6) years from the Effective Date of the Plan; and (ii) the Debtor's Net Income earned by the Debtor from MWFF over a period of six (6) years from the Effective Date of the Plan.

The following is a detailed synopsis of the specific treatment of creditors per class under the Plan.

1. **Class 1** - Class 1 claims include Administrative Expense Claims and Professional Administrative Claims, which shall be paid in full, in cash, within thirty (30) days of the Confirmation Date, unless an agreement is reached with the claimant for a different term of payment. Any Administrative Expense Claims may be deferred and paid in accordance with the terms and conditions of any agreement relating thereto reached by the Reorganized Debtor and the respective administrative expense claimant. A governmental unit shall not be required to file a request for the payment of an administrative expense as a condition of its claim being an allowed Administrative Expense Claim; however, such governmental units are required to file a proof of claim for such post-petition taxes prior to the Confirmation Date, absent which such post-petition tax claim will be disallowed and not paid by the Debtor. Included for payment in this class are the attorney's fees due Darryl T. Landwehr for services rendered as counsel for the Debtor currently in

the approximate amount of $12,755.80. Also included in this class is the U. S. Trustee. All payable fees due the U. S. Trustee under 28 U.S.C. § 1930(a)(6) shall be paid in accordance with that statute. Class 1 claims shall be paid from funds held by the estate and the Debtors' Net Income, when allowed by the Bankruptcy Court. Additional Class 1 attorney's fees and costs are anticipated to run $20,000.00 to $30,000.00.

2. **Class 2** - Class 2 claims include those unsecured claims entitled to priority under § 507(a)(8) of the Bankruptcy Code and which are those taxes, customs and duties owing federal, state and local governmental units. Priority Tax Claims shall be paid in equal monthly installments consisting of principal and interest, at the applicable statutory rate in effect as of the date of confirmation of the Plan, over a period not to exceed five (5) years from the Petition Date. The amount of the monthly installment to be remitted to the priority tax claimant shall be determined by taking the total principal amount of such priority tax claim and dividing that amount by the number of months remaining after discounting for the number of months which have elapsed from the Petition Date through the last business day of the month in which the Effective Date occurs. Added to the amount of that payment will be an additional payment equal to interest calculated at the applicable statutory rate due such tax claimant amortized over the number of months, as calculated by utilizing the formula set forth in this paragraph. The first payment to Class 2 creditors will commence on the first business day of the first full month which is at least thirty (30) days following the Effective Date, and, thereafter, on the first business day of each subsequent month until paid in full. Debtor reserves the right to pre-pay any Class 2 claim in full. The interest rate payable on Priority Tax Claims shall be the applicable statutory rate and is anticipated to be three (3%) percent per annum as of the Effective Date. To the extent there are sufficient funds/proceeds remaining in Sale Escrow Account #1, after payment of all Liens and administrative expenses, such funds will be distributed to the allowed Class 2 claims on a *pro rata* basis. There are no known priority tax claims.

3. **Class 3** - Class 3 consists of those Unsecured Claims entitled to priority under section 507 of the Bankruptcy Code other than Priority Tax Claims. Priority Claims shall be paid in equal monthly installments consisting of principal and interest, at the applicable statutory rate in effect as of the date of confirmation of the Plan, over a period not to exceed five (5) years from the Effective Date. The first payment to Class 3 creditors will commence on the first business day of the first full month which is at least thirty (30) days following the Effective Date, and, thereafter, on the first business day of each subsequent month until paid in full. Debtor reserves the right to pre-pay any Class 3 claim in full. The interest rate payable on Priority Claims shall be two (2%) percent per annum. There are no known claims in this class.

4. **Class 4** - Class 4 consists of Wells Fargo, to the extent its claim is secured by a first or first ranking mortgage on the Colonial Club Property in the amount of $552,044.99. Commencing the first day of the month which is at least thirty (30) days after the Effective Date, the Debtor will pay this creditor's Allowed Secured Claim, in full, by remitting consecutive monthly payments in the amount of $6,140.90 (P & I of $5,090.66, taxes and insurance of $1,050.24), which consecutive monthly installments will continue for each and every month thereafter, until this claim is paid in full. This creditor will receive interest at the contractual rate on its claim and this creditor shall retain its mortgage and Lien on the Colonial Club Property post-confirmation.

5. **Class 5** – Class 5 consists of Wells Fargo in the approximate amount of $73,614.11, to the extent its claim is secured by a second or second ranking Mortgage or Mortgage that is junior in ranking to that of the first ranking Mortgage on the Colonial Club Property also held by Wells Fargo in the amount of $590,556.00 ($552,045.00 in principal, $25,908.00 in calculated post-petition interest and $12,603.00 in calculated post-petition escrow advances). This claim is partially or unsecured under the provisions of Section 506(b) of the Bankruptcy Code. After allocating for the first and second mortgages held by Wells Fargo on the Colonial Club Property, and in comparison to the value thereof, the Debtor's Colonial Club Property is encumbered beyond its value. Accordingly, as to the Debtor, this creditor's claim, as secured by a second ranking mortgage, is partially secured and partially unsecured based upon the entire balance due and owing on the note held by Wells Fargo that is secured by a first mortgage on the Colonial Club Property. Based on the appraised value of this property of $600,000.00, this claim is and will be treated as a secured claim in an amount of no greater than $9,444.00, and the balance of this claim is unsecured.  The unsecured portion of this claim (i.e.) any amount in excess of $9,444.00, will be treated as a Class 11 unsecured claim in the Plan and will be paid in accordance with the provisions of Class 11 of the Plan. Wells Fargo reserves the right to seek a valuation hearing on the Colonial Club Property prior to confirmation; however, absent the entry of an order by the Bankruptcy Court determining that the Wells Fargo is fully secured, this claim will be treated as a secured claim in the amount of $9,444.00 and an unsecured claim for the balance in the Plan. The Allowed Secured Claim of Wells Fargo in this Class, as determined under 506(b) of the Bankruptcy Code (i.e., $9,444.00), shall be paid in equal monthly installments in the amount of $136.75 each, such payments to commence on the first day of the month that is at least 60 days from the Effective Date and will continue until the amount of $9,444.00 has been to this Creditor on its Allowed Secured Claim.

The unsecured portion thereof, as determined under 506(b), shall be treated as a Class 11 claim for purposes of this Plan and such claims shall be paid in accordance with the provisions of Class 11 hereinbelow.

As of the date of the filing of the Debtor's voluntary petition, the total amount of Wells Fargo's claim in this class is $73,617.11 and the Colonial Club Property has a fair market value as of that date of $600,000.00.  Thus, the amount of this creditor's collateral (i.e., the Colonial Club Property), for purposes of his Plan, the confirmation thereof, and the elimination or "stripping" of the Mortgage and/or lien and/or second ranking Mortgage held by Wells Fargo is $600,000.00, and the amount of the senior or priming mortgages which encumber this property currently totals $590,556.00 (i.e., $552,045.00 in principal, $25,908.00 in calculated post-petition interest and $12,603.00 in calculated post-petition escrow advances). Accordingly, Wells Fargo's claim that is secured by a second or second ranking Mortgage, or Mortgage that is junior in ranking to that of the first ranking Mortgage on the Colonial Club Property, is undersecured as to the Debtor and the Colonial Club Property. **Wells Fargo will retain its second ranking mortgage on the Colonial Club Property (i.e., Mortgage for $115,875.00 in favor of American Brokers Conduit dated 10/3/2005 and filed in MOB 4257-385, instrument no. 10555746 of the Jefferson Parish mortgage records) post-Confirmation and until its Allowed Secured Claim of $9,444.00 is paid in full, upon which the Mortgage held by Wells Fargo shall be cancelled and erased**

11

**from the Jefferson Parish mortgage records.  Confirmation of the Plan will result in a judicial determination and adjudication that the Colonial Club Property has a fair market value of $600,000.00.**

6. **Class 6** – Class 6 consists of the Secured Claim of the SBA, the holder of a Promissory Note executed by MWFF and Wheat Holdings, LLC, in the principal amount of $524,000.00, and which note is personally guaranteed by the Debtor up to the value of the Hudson Street Property or the "amount the SBA obtains from its collateral consisting of the Hudson Street Property" only. The Note is secured by a Mortgage encumbering the Debtor's Colonial Club Property and a Mortgage encumbering the Debtor's Hudson Street Property.  The Promissory Note held by the SBA, as modified by a "first modification of note", under the terms of which the payment of the note is as follows:  the loan amount is $1,500,000.00, the interest rate is 4.0% per annum, all of which is payable in payments of $7,572.00 due every month commencing March 8, 2008, with all remaining principal and accrued interest being due and payable on September 8, 2013.  The first modification of note further provides for MWFF to make a supplemental annual payment equal to 10% of that company's net earnings which, for the purposes of that condition, "net earnings" is defined as net profit after tax plus depreciation less scheduled principal payments on all indebtedness of MWFF at the time of the application less principal payments against the loan. Under the further provisions of the first modification of note, MWFF is to make each supplemental annual payment no later than 90 days following the close of that company's fiscal year ending June 30th. This creditor's secured claim shall be paid from the proceeds derived from the sale or auction of the Hudson Street Property. Under the provisions of the Limited Guarantee executed by the Debtor in favor of the SBA, his payment liability is limited to the amount the SBA obtains from its collateral consisting of the Hudson Street Property only. Accordingly, the SBA's claim is actually of an *in rem* nature as to the Debtor and this claim will be satisfied in full as to the Debtor by and upon the payment or tendering of the proceeds derived from sale or auction of the Hudson Street Property to the SBA. The Debtor's Colonial Club Property is encumbered beyond its value.  In fact, the combined values of both properties are less than the amount which the Debtor owes to the priming mortgage holder thereon, i.e., Wells Fargo. Accordingly, as to the Debtor, this creditor's remaining in rem claim on the Colonial Club Property is wholly unsecured. SBA reserves the right to seek a valuation hearing on the Colonial Club Property and the Hudson Street Property prior to confirmation; however, notwithstanding the entry of an order by the Bankruptcy Court determining that SBA is partially or under secured on the Colonial Club Property there is no secured or unsecured claim of the SBA on the Colonial Club Property. On the confirmation date, the SBA's mortgage on the Colonial Club Property shall be cancelled and erased from the Jefferson Parish mortgage records on Confirmation; however its mortgage on the Hudson Street Property is maintained post-confirmation and until that property is sold by the Debtor. **On the Confirmation date, the Multiple Indebtedness Mortgage on the Colonial Club Property, dated 11/16/2016, held by the SBA and recorded under instrument no. 10671278 in the Jefferson Parish mortgage records, shall be cancelled and erased from the Jefferson Parish mortgage records, and no Mortgage or lien held by or in favor of the SBA on the Colonial Club Property will be preserved post-Confirmation.**

7. **Class 7** – Class 7 shall include the claim of Diversified Construction, Inc. ("Diversified"), which claim is secured by a second ranking mortgage on the Debtor's Hudson

Street Property and a fourth ranking mortgage on the Debtor's Colonial Club Property.   In accordance with the provisions of Section 506(b) of the Bankruptcy Code, this creditor's claim shall be bifurcated into secured and unsecured claims based upon the remaining equity available, if any, in the Debtor's Colonial Club Property and the Debtor's Hudson Street Property, after allocating for the amounts of the priming or encumbrances senior to that of Diversified on these properties in comparison to the values thereof.  The Debtor's Colonial Club Property and the Debtor's Hudson Street Property are encumbered beyond their value.  In fact, the values of both of these properties are less than the amount which the Debtor owes to the priming mortgage holders thereon, i.e., Wells Fargo and the SBA.  Accordingly, as to the Debtor, this creditor's claim is wholly unsecured and, accordingly, this claim will be treated as a Class 11 unsecured claim through the Plan. Diversified reserves the right to seek a valuation hearing on the Colonial Club Property and the Hudson Street Property prior to confirmation; however, notwithstanding the entry of an order by the Bankruptcy Court determining that Diversified is partially or under secured, this claim will be treated as a Class 11 unsecured claim in this proceeding. Accordingly, absent the entry of an order by the Bankruptcy Court allowing the claim of Diversified Financial Services as a wholly, partially or under secured claim in this proceeding, there is no Class 7 secured claim and Diversified Financial Services' claim will be treated as an unsecured claim in this proceeding.  To the extent that Diversified holds an Allowed Secured Claim, as determined under 506(b) of the Bankruptcy Code, this creditor's allowed secured claim shall be paid in regular monthly installments in the amount of $1,000.00 each, with interest at the contractual rate, in equal monthly installments, commencing on the first day of the month that is at least 30 days from the Effective Date, until the amount of this Creditor's allowed secured claim as determined under Section 506(b) of the Bankruptcy Code, is paid in full.

The unsecured portion thereof, as determined under 506(b), shall be treated as a Class 11 claim for purposes of this Plan and such claims shall be paid in accordance with the provisions of Class 11 hereinbelow. As of the date of the filing of the Debtor's voluntary petition, the total amount of Diversified's claim is $240,000.00, the Colonial Club Property has a fair market value as of that date in the amount of $600,000.00, and the Hudson Street Property has a fair market value in the amount of $140,000.00.  Thus, the combined amount of this creditor's collateral, for purposes of his Plan and the bifurcation of said creditor's claims, is $640,000.00, and the amount of the senior or priming mortgages which encumber these properties total $1,797,471.87. Accordingly, Diversified's claim is completely unsecured as to the Debtor and the entire amount of its claim will be treated as an Unsecured Claim, which Unsecured Claim will be paid in accordance with the provisions of and as a Class 11 claim hereinbelow. On the Confirmation date, Diversified's mortgages on the Colonial Club Property and on the Hudson Street Property shall be cancelled and removed from the Jefferson Parish mortgage records. **On the Confirmation date, the Mortgage held by Diversified on the Colonial Club Property dated 2/13/2012 and filed in MOB 4519-493, instrument no. 11206970, of the Jefferson Parish mortgage records, shall be cancelled and erased from the Jefferson Parish mortgage records, and no Mortgage or lien held by or in favor of Diversified on the Colonial Club Property will be preserved post-Confirmation.  Confirmation of the Plan will result in an adjudication and determination by the Bankruptcy Court that the Colonial Club Property has a fair market value of $600,000.00 as of the date of confirmation of debtor's Plan.**

13

8. **Class 8** – Class 8 is composed of Mercedes-Benz Financial USA, LLC/BK Servicing, LLC ("Mercedes Benz") to the extent it holds an allowed Secured Claim, which claim is secured by a valid security interest in the Debtor's SL500 R Mercedes-Benz automobile, in the amount of $1,000.00.  The Debtor is current on the contractual payments to Mercedes-Benz, and this creditor will continue to receive its contractual note payments in the amount of $1,076.51 per month until this Secured Claim is paid in full.  This creditor will retain its security interest in the Debtor's SL500 R Mercedes-Benz automobile until this creditor's claim is paid in full, which should be prior to continuation.

9.   Class 9 is composed of Toyota Motor Credit Corporation to the extent it has an allowed Secured Claim, which claim is secured by a security interest in the Debtor's 2008 Toyota automobile.  The amount of this creditor's claim is approximately $8,649.30. Toyota Motor Credit Corporation is the holder of a Retail Installment Contract under the terms and provisions of which the Debtor is to pay the sum of $42,840.00 in 71 regular payments of $595.00, commencing November 15, 2008, and one final payment in the amount of $595.00 due on October 15, 2014.  The 2008 Toyota Tacoma is co-owned by the Debtor and the Debtor's son, James B. Wheat, Jr. On confirmation the debtor will sell his 50% interest in the 2008 Toyota pickup truck to his son, James Bryant Wheat, Jr., and the note payments on this vehicle will be made and remitted by the Debtor's son in the amount of $595.00 each, post-confirmation, until the Allowed Secured Claim of Toyota Motor Credit Corporation is paid in full.  This creditor will retain its lien and security interest in the 2008 Toyota Tacoma until its Allowed Secured Claim is paid in full.  No payments will be made to this creditor by the Debtor.

10.  **Class 10** – Class 10 shall include the claim of the Sherwin-Williams Company, which claim is secured by a judicial mortgage on the Debtor's Colonial Club Property and Hudson Street Property, in the amount of $2,400.00.  On May 21, 2012, the Sherwin-Williams Company, in proceedings entitled the "Sherwin-Williams Company vs. David E. Allen and James B. Wheat" then pending in the 22nd Judicial District Court, in proceedings bearing case number 2005-13054, obtained a judgment in the amount of $2,400.00, which judgment was recorded on June 22, 2012, in the Jefferson Parish Mortgage Records under Instrument #11228831.

In accordance with the provisions of Section 506(b) of the Bankruptcy Code, this creditor's claim shall be bifurcated into secured and unsecured claims based upon the remaining equity available, if any, in the Debtor's Colonial Club Property and the Debtor's Hudson Street Property, after allocating for the amounts of the priming or encumbrances senior to that of the Sherwin-Williams Company on these properties in comparison to the values thereof.  The Debtor's Colonial Club Property and the Debtor's Hudson Street Property are encumbered beyond their value.  In fact, the values of both of these properties are less than the amount which the Debtor owes to the priming mortgage holders thereon, i.e., Wells Fargo and the SBA.  Accordingly, as to the Debtor, this claim is wholly unsecured and, accordingly, this claim will be treated as a Class 11 unsecured claim through the Plan.   The Sherwin-Williams Company reserves the right to seek a valuation hearing on the Colonial Club Property and the Hudson Street Property prior to confirmation; however, notwithstanding the entry of an order by the Bankruptcy Court determining that the Sherwin-Williams Company is partially secured, this claim will be treated as a Class 11 unsecured

claim in this proceeding. Accordingly, absent the entry of an order by the Bankruptcy Court allowing the claim of the Sherwin-Williams Company as a wholly secured claim, a partially secured claim or an under secured claim in this proceeding, the amount of Sherwin-Williams Company Allowed Secured Claim is zero, no payments will be made to this class under the Plan and claim of Sherwin-Williams Company will be treated as an unsecured claim or Class 11 claim in this proceeding.  To the extent that the Sherwin-Williams Company holds an Allowed Secured Claim, as determined under 506(b) of the Bankruptcy Code, this creditor's Allowed Secured Claim shall be paid in regular monthly installments in the amount of $100.00 each, with interest at the Judicial rate, in equal monthly installments, commencing on the first day of the month that is at least 30 days from the Effective Date, until the amount of this Creditor's allowed secured claim as determined under Section 506(b) of the Bankruptcy Code, is paid in full.  . On the Confirmation date, Sherwin-Williams Company's judgment, judicial mortgages and/or liens on the Colonial Club Property and on the Hudson Street Property shall be cancelled and erased from the Jefferson Parish mortgage records.

The unsecured portion of this creditor's claim, as determined under 506(b), shall be treated as a Class 11 claim for purposes of this Plan and such claims shall be paid in accordance with the provisions of Class 11 hereinbelow. As of the date of the filing of the Debtor's voluntary petition, the total amount of the Sherwin-Williams Company's claim is $2,400.00, the Colonial Club Property has a fair market value as of that date in the amount of $500,000.00, and the Hudson Street Property has a fair market value in the amount of $140,000.00.  Thus, the combined amount of this creditor's collateral, for purposes of his Plan and the bifurcation of said creditor's claims, is $640,000.00, and the amount of the senior or priming mortgages which encumber these properties total $1,797,471.87.  Accordingly, the Sherwin-Williams Company's claim is completely unsecured as to the Debtor and the entire amount of its claim will be treated as an Unsecured Claim, which Unsecured Claim will be paid in accordance with the provisions of and as a Class 11 claim hereinbelow.  **On the Confirmation date, the Judgment for $2,400.00 held by the Sherwin-Williams Company on the Colonial Club Property dated 5/21/2012 and filed in MOB 4535-216, instrument no. 11228831, of the Jefferson Parish mortgage records, shall be cancelled and erased from the Jefferson Parish mortgage records, and no Judgment or lien held by or in favor of the Sherwin-Williams Company's on the Colonial Club Property will be preserved post-Confirmation. Confirmation of the Plan will result in an adjudication and determination by the Bankruptcy Court that the Colonial Club Property has a fair market value of $600,000.00 as of the date of confirmation of debtor's Plan.**

11. <u>**Class 11**</u> - Class 11 consists of all Allowed Unsecured Claims and any other claim not treated elsewhere in this Plan, including claims arising from the rejection of any executory contract or unexpired lease by the Debtor prior to confirmation or in the Plan. This class shall also include the unsecured or deficiency portion of any creditor's Secured Claim.  Each of the Allowed Claims of the Creditors in Class 11 shall be paid, without interest, from the Cash Escrow Account, on a *Pro Rata* basis, but only after payment of the Class 1 Administrative Expenses, Class 2 Priority Tax Claims, and Class 3 Priority Claims.  Also, the tax liabilities and/or tax obligations arising from the sale of the Hudson Street Property to any federal or state taxing agency, including Class 1 Administrative Expense Claims, Class 2 Priority Claims and

Class 3 Priority Claims, shall be paid prior to any distributions being made to Class 11 creditors. Debtor will utilize 100% of his Net Income to pay Class 11 creditors under the Plan. Commencing on the first business day which is at least thirty days after the Effective Date, Debtor will commence to deposit 100% of his Net Income into a special "Net Income Account" to be maintained by the Debtor at the bank of his choosing.    Debtor will continue to deposit 100% of his net income into the "Net Income Account" for a period of seventy-two (72) months post-Effective Date.   Payments to Class 11 creditors shall be on a quarterly basis and shall commence on the day of the first full month which is at least 60 days after the Effective Date. Contributions from the Debtor's Net Income to fund the Plan payments to this class will continue for a period of 72 months post-Effective Date unless, prior to that time, all Class 11 Unsecured Claims have been paid, in full, without interest.

## ARTICLE VI. CLAIMS THAT ARE UNIMPAIRED

The claims of creditors in Classes 1, 2, 3 and 9 are not intended to be impaired in as much as they will be paid in cash or in accordance with the provisions of the Bankruptcy Code applicable to the payment of administrative expenses and priority claims.

## ARTICLE VII. CLAIMS WHICH ARE IMPAIRED

The claims of creditors in Classes 4, 5, 6, 7, 8, 10 and 11 are impaired. These claims will be satisfied pursuant to Article V hereinabove, which provides for payment to those creditors whose claims are impaired.

## ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS TO CREDITORS

1. Debtor reserves the right to pre-pay the claim of any federal, state or local government-taxing agency.

2. Only those creditors who have timely filed claims prior to the Existing Bar Date shall be deemed to have allowed claims for purposes of distribution under this plan provided, however, that there is no pending objection thereto. In the event that there is an objection pending to any timely filed claim, such claims shall not be deemed allowed for purposes of voting on the Plan or for purposes of distribution under the Plan, until a final non-appealable order has been entered by the Bankruptcy Court overruling the objection to such claim and allowing such claim for purposes of distribution.

3. The Debtor, the Reorganized Debtor and any other party in interest shall retain the right to object to Claims after the Confirmation Date in order to have the Bankruptcy Court determine the amount and treatment of any Claim.   Subject to further order of the Court, objections to Claims (including, but not limited to, any Claim arising from or relating to the rejection of any Executory Contract or unexpired lease) shall be filed with the Court and mailed to the holder of the Claim to which objection is made not later than one hundred twenty (120) days of the Confirmation Date or ninety (90) days after a proof of claim is filed, whichever date is later.

16

4. No payment or distribution shall be made by the Reorganized Debtor with respect to a Disputed Claim until it becomes an Allowed Claim.  Once a Disputed Claim becomes an Allowed Claim, the Allowed Claim shall be paid in accordance with the provisions of Class 11 of the Plan. Holders of disputed claims that become Allowed Claims shall be bound, obligated and governed in all respects by the provisions of the Plan.

5. The Reorganized Debtor, as the Distribution Agent, shall make all distributions required under the Plan.

6. Cash payments made pursuant to the Plan shall be in U. S. funds, by check drawn on a domestic bank, or by wire transfer from a domestic bank, except that payments made to foreign creditors holding Allowed Claims may, at the Debtor's election, be made in such funds and paid by such means as are customary or may be necessary in a particular foreign jurisdiction.

7. Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders (or at the last known address of such a holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address).  If any holder's distribution is returned as undeliverable and after good faith inquiry by the Reorganized Debtor to obtain a correct address, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made through the Reorganized Debtor shall be returned to the Reorganized Debtor and held thereby for a period of 90 days. If such distributions remain unclaimed after 90 days of return to the Reorganized Debtor, all unclaimed distributions shall be remitted to the other Class 11 creditors on a *Pro Rata* basis and the holder of any claim for such unclaimed distribution shall be forever barred from attempting to collect that distribution from the Reorganized Debtor.

8. Checks issued by the Reorganized Debtor in respect to Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance thereof.  Request for issuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.

9. Any distributions to creditors holding a Disputed Claim will be set aside and reserved in Sale Escrow Account #1 if it is a disputed Secured Claim and in a Disputed Claims Account if it is an Unsecured Claim. Only at such time and to the extent that a Disputed Claim is disallowed by a final order shall those funds reserved and set aside for that Disputed Claim be made available for distribution to Allowed Claims or equity interests.

## ARTICLE IX. DISBURSEMENT AGENT

In the event of a sale or auction of the Hudson Street Property, and at the time of the consummation of the sale or auction, the Reorganized Debtor shall establish and maintain Sale Escrow Account #1, into which the sales proceeds received for the Hudson Street Property. The

Reorganized Debtor shall act as the Disbursing Agent with respect to the distributions made from Sale Escrow Account #1 and the Cash Escrow Account.

## ARTICLE X. EXECUTORY CONTRACTS

Any and all executory contracts and/or leases to which the Debtor is party are rejected as of the Confirmation Date.

The confirmation order shall constitute an order of the Bankruptcy Court approving all rejections as of the Confirmation Date.

The Reorganized Debtor reserves the right to reject any Executory Contract or Lease not listed herein at any time prior to the Confirmation Hearing. Any Executory Contract or lease not expressly assumed or accepted in the Plan shall be deemed rejected by the Debtor as of the date of the Confirmation Order pursuant to Sections 365 and 1123 of the Bankruptcy Code.

**THE DEBTOR IS UNAWARE OF ANY EXECUTORY CONTRACT THAT IT INTENDS TO ASSUME, THAT REQUIRES CURE PAYMENTS. THAT NOTWITHSTANDING, ANY CLAIMS BY ANY CREDITOR OR PARTY FOR SUCH CURE PAYMENTS AND/OR DAMAGES SHALL BE DISCHARGED ON CONFIRMATION.**

Claims for damages against the Debtor or the Reorganized Debtor arising from the rejection of an Executory Contract or unexpired lease before the Confirmation Date shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or her property or any assignee of such property, and no holder of any such Claim shall participate in any distribution under the Plan with respect to that Claim unless: (i) a Proof of Claim is served on the Debtor and filed with the Court within 30 days of the Debtor's provisional notice to the Claimant of the rejection of such Executory Contract, or such other deadline as previously set by the Court; and (ii) such Claim is determined to be an Allowed Claim, either because no timely objection is filed or because the Court allows the Claim after a timely filed objection. Upon confirmation, the Reorganized Debtor shall be deemed to have rejected any and all prepetition executory contracts and unexpired leases, except those leases and executory contracts which were assumed under application or applications previously filed by the Debtor in this proceeding or in the Plan.

Except as otherwise provided herein, any and all Allowed Claims arising from the rejection of any executory contract or lease shall be treated as a Class 11 Claim in the Plan, and shall be paid as a Class 11 Claim in the Plan.

## ARTICLE XI. CLAIMS FOR ADMINISTRATIVE EXPENSES AND OVERSECURED CLAIMS

Administrative Expenses. Claims for Administrative Expenses, including any allowances of compensation and reimbursement of expenses, save and except for those professionals employed as counsel or accountant for the Debtor and any taxing agency (i) shall file their respective final applications for the allowance of Administrative Expenses incurred through the Confirmation Date no later than sixty (60) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if allowed compensation by the Bankruptcy Court, shall be paid in full in cash within thirty (30) days of the Confirmation Date or the entry of a Final Order allowing and recognizing such claim, whichever is the later, unless an agreement is reached by and between the Reorganized Debtor and the Administrative Expenses Claimant for a longer term for payment.

Section 506(b) Claims. No Secured Creditor shall be entitled to recover default interest, late charges or a prepayment penalty as part of its Secured Claim, Undersecured Claim, or Unsecured Claim. Any post-petition interest, costs, attorney fees on any claim will only be paid to the extent such fees and costs are allowed pursuant to Section 506(b) of the Bankruptcy Code and in accordance with the other terms and provisions of the Plan. The Reorganized Debtor reserves its right to object to any application submitted or proof of claim filed in this proceeding seeking or claiming such fees or costs, pursuant to Section 506(b) of the Bankruptcy Code, post-petition.

## ARTICLE XII. IMPLEMENTATION AND EFFECT OF THE PLAN

1. The Plan provides for the sale of the Debtor's right, title and interest in and to the Hudson Street Property, free and clear of all Liens, for the price and sum of no less than $105,000.00, pursuant to Section 363 of the Bankruptcy Code. The Debtor anticipates that the sale of the Hudson Street Property will be consummated within 180 days after the Effective Date. In the event the sale of the Debtor's Hudson Street Property is not consummated within 360 days from the Effective Date, the Reorganized Debtor shall retain an auctioneer to auction the Hudson Street Property. The auctioneer's fee or commission will be paid in preference to all claims whether secured or unsecured. IN THE EVENT OF AN AUCTION UNDER ALTERNATIVE 2 OF THE PLAN, ANY REALTOR HOLDING A CURRENT LISTING AGREEMENT WITH THE DEBTOR SHALL NOT BE PAID A COMMISSION AND ANY CONTRACT WITH THE DEBTOR FOR THE LISTING OF THE HUDSON STREET PROPERTY. FURTHER, ANY CONTRACT WITH THE DEBTOR FOR THE LISTING OF THE HUDSON STREET PROPERTY WILL BE DEEMED TERMINATED AND SUCH REALTOR WILL HOLD NO CLAIM AGAINST THE DEBTOR OR THE ESTATE AND ANY SUCH CLAIM TO BE DISCHARGED ON THE CONFIRMATION DATE.

2. The proposed distributions to be made under the Plan may differ from the actual distributions which are made for many reasons, including substantial variations in the amounts of allowed claims or the ultimate allowance of any Disputed Claim.

3. The Debtor presently knows of no viable action for the avoidance of preferential transfers or fraudulent conveyance.

4.   Notwithstanding any provision in the Plan to the contrary, no payment will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order of the Court.  Unless otherwise agreed in writing, if and once a claim that has been disputed becomes Allowed, payments to the holder of such Allowed Claim shall commence on the next regular date and any payments due to such holder under the Plan that were not made while the Claim was disputed shall be paid as additional periodic payments at the end of the term of payments for Allowed Claims in such Class.

5.   The Debtor will receive a discharge as provided by Section 1141(d)(5) of the Bankruptcy Code upon the completion of all Plan payments. As of the Effective Date, and as except as otherwise provided in this Plan, any property of the Debtor not sold or liquidated as authorized under the terms of this Plan, shall be vested in the Reorganized Debtor free and clear of all liens, claims and interests of holders of Claims and Equity Interests.  Any Claim asserted in any fashion after the Confirmation Date by any Entity who received notice of this Bankruptcy Case prior to the Confirmation Date shall be disallowed, is discharged by the Plan, and shall receive no disbursements under the Plan.  The rights afforded in the Plan and the treatment of all Claims is in exchange for and in complete satisfaction of the Claims, including any interest accrued on such Claims from and after the Effective Date, against the Debtor or his assets.

6. ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTOR, ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE REORGANIZED DEBTOR WITH RESPECT TO ANY SUCH CLAIM, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM.   SUCH INJUNCTION SHALL EXTEND TO ANY SUCCESSOR OF THE REORGANIZED DEBTOR AND THEIR RESPECTIVE PROPERTIES AND INTERESTS IN PROPERTY.

7. Once the Sale Escrow Account is funded, then the Reorganized Debtor as the Distribution Agent may commence the payment of Allowed Claims (either in full or, if insufficient proceeds were realized from the sale, on a *Pro Rata* basis), however, the Court may authorize earlier partial distributions, upon motion and notice to all creditors, interests, parties in interest, and a hearing, at all times reserving cash for the *Pro Rata* portions of the Disputed Claims in the event they become Allowed Claims.

8. The Hudson Street Property will be sold pursuant to the terms of the Plan shall be sold free and clear of all liens, claims, encumbrances and security interests, with all liens, claims,

encumbrances and security interests transferred to the proceeds of such sale as maintained in the respective Sale Escrow Account.

9.  All claims for Professional Fees or Professional Administrative Expenses Claims or for the Distribution Agent or its counsel are subject to review by the Court and shall be approved by the Court prior to my distribution being made by the Reorganized Debtor for such claims or expenses. The Court retains jurisdiction post-confirmation to approve such fees and expenses prior to disbursement.

## ARTICLE XIII. ACCEPTANCE OR REJECTION OF THE PLAN AND EFFECT OF REJECTION BY AN IMPAIRED CLASS

1. Each member of an impaired class of Claims that holds an Allowed Claim shall be entitled to vote separately to accept or reject the Plan.

2. Except as provided in Section 1126(e) of the Bankruptcy Code, a class of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of that class that have timely and properly voted to accept or reject the Plan.

3. Any Entity holding two or more duplicate Claims shall be entitled to vote only one Claim.  Otherwise, holders of Claims in impaired classes shall be entitled to vote if:

(a)     Such Claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules as other than contingent, unliquidated, or disputed, and as to which no Proof of Claim has been filed.  The Claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such Claim has been filed or listed in the Debtor's schedules;

(b)     Such Claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, but only if and to the extent temporarily allowed for voting purposes by order of the Bankruptcy Court in accordance with Bankruptcy Rule 3018; or

(c)     Such Claim has been filed in an undetermined amount, in which case the Creditor shall not be entitled to vote unless the Debtor and the Creditor agree on an amount for voting purposes or the Bankruptcy Court enters an order setting the amount of the Claim for voting purposes.

## ARTICLE XIV. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND OBJECTION TO PROOFS OF CLAIM

1. The Debtor and any other party in interest will retain the right to object to Claims after the Confirmation Date and after the Effective Date in order to have the Bankruptcy Court determine the amount and treatment of any Claim.  Subject to further order of the Court,

objections to Claims (including, but not limited to, any Claim arising from or relating to the rejection of any Executory Contracts) shall be filed with the Court and mailed to the holder of the Claim to which objection is made not later than one hundred twenty (120) days following the Confirmation Date or ninety (90) days after a Proof of Claim is filed, whichever is later.

2. No payment or distribution shall be made by the Debtor with respect to a Disputed Claim until it becomes an Allowed Claim. Once a Disputed Claim becomes an Allowed Claim, the Allowed Claim shall be paid in accordance with Article VIII hereinabove as applicable. Holders of Disputed Claims that become Allowed Claims shall be bound in all respects by the provisions of this Plan.

3. Debtor shall set aside and reserve sufficient funds from distributions for persons holding Disputed Claims in the Sale Escrow Account or the Cash Escrow Account depending upon the claimed status of such claim as secured or unsecured, respectively, pending adjudication by the Bankruptcy Court of that Disputed Claim. Only at such time and to the extent that a Disputed Claim is disallowed by a Final Order shall those funds reserved and set aside for that Disputed Claim be made available for distribution to Allowed Claims in accordance with Article VIII herein as applicable.

4. Any monies not disbursed on account of a claim that is disallowed by a final and non-appealable order shall be placed in the "Cash Escrow Account" utilized to pay Class 11 unsecured claims.

## ARTICLE XV. RELEASES, TERMINATIONS AND SETTLEMENTS OF CLAIMS

1. Subject to the provisions of section 1141(d)(5) of the Bankruptcy Code, and except for the obligations imposed herein, the distributions and rights that are provided herein shall be in complete satisfaction, discharge and release of: (i) all Claims against, liabilities of, liens on, obligations of, and interests in the Debtor and the assets and properties of the Debtor, whether known or unknown, and (ii) all causes of action, whether known or unknown, against the Debtor or the successors and assigns of the Debtor based on the same subject matter as any Claim or based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date, that was or could have been the subject of any Claim in this Bankruptcy Case regardless of whether a Proof of Claim was filed, regardless of whether any such Claim has been allowed, and regardless of whether the holder of any such Claim has voted on the Plan. Nothing in this paragraph is intended to act as a release of any obligations of any party other than the Debtor.

2. The classification of and the manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be a joint obligor with another Entity with respect to the same obligation, which in turn may give rise to a Claim for contribution or indemnification. All Claims against the Debtor based upon or having any benefit of any such joint liability shall be satisfied, discharged and released in the manner provided in the Plan, and Creditors shall be entitled to only one distribution, and no duplicative or multiple recovery, with respect to any

underlying obligation of the Debtor. Nothing in this paragraph is intended to act as a release of any obligations of any party other than the Debtor.

## ARTICLE XVI. LITIGATION

1. The suits on behalf of and against the Debtor are listed in the Schedules and Statements. If any litigation pending at the time the petition herein was filed is resolved by settlement or judgment adverse to the Debtor, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor and shall share in disbursements as a member of Class 11, but only in and to the extent that disbursements are made from and after the date of the settlement or the date on which a final judgment is rendered.

2. If any litigation pending at the time the petition herein was filed or initiated post-petition by Debtor is resolved by settlement or judgment in favor of the Debtor, the sums received shall be utilized to fund the Plan.

3. There are no known preferential transfers or fraudulent conveyance actions to be initiated by the Debtor or the Reorganized Debtor.

## ARTICLE XVII. CLAIMS WITH RECOURSE TO INSURANCE COVERAGE

All allowed general unsecured claims with recourse to insurance coverage policies of the Debtor covering tort claims shall be referred to the Debtor's insurer for initial payment. The Debtor's insurer providing applicable coverage for the claim in question, in the event an adverse judgment is rendered against the Debtor with respect thereto, shall pay these claims. In the event that a claim entitled to coverage under insurance policy of the Debtor is not satisfied, in whole, or in part, under such policy, such claim shall be treated as the holder of a Class 11 general unsecured claim in the Plan, and shall receive a distribution on its claim as set forth in the provisions contained in Article IV of the Plan, with respect to the payment of Class 11 claims. Debtor will reserve a sufficient amount to cover the deductible due its insurer for any claims with recourse against its insurers.

## ARTICLE XVIII. IMPLEMENTATION AND EFFECT OF THE PLAN

1. The Plan provides for the sale of the Debtor's right, title and interest in and to the Hudson Street Property free and clear of all Liens, for the price and sum of no less than $105,000.00, pursuant to Section 363 of the Bankruptcy Code. The Debtor anticipates that the sale of the Hudson Street Property will be consummated within 180 days after the Effective Date. In the event the sale of the Debtor's Hudson Street Property is not consummated within 360 days from the Effective Date, the Reorganized Debtor shall retain an auctioneer to auction the Hudson Street Property. The auctioneer's fee or commission will be paid in preference to all claims whether secured or unsecured. IN THE EVENT OF AN AUCTION UNDER ALTERNATIVE 2 OF THE PLAN, ANY REALTOR HOLDING A CURRENT LISTING AGREEMENT WITH THE DEBTOR SHALL NOT BE PAID A COMMISSION AND ANY CONTRACT WITH THE DEBTOR FOR THE LISTING OF THE HUDSON STREET PROPERTY. FURTHER, ANY

CONTRACT WITH THE DEBTOR FOR THE LISTING OF THE HUDSON STREET PROPERTY WILL BE DEEMED TERMINATED AND SUCH REALTOR WILL HOLD NO CLAIM AGAINST THE DEBTOR OR THE ESTATE AND ANY SUCH CLAIM TO BE DISCHARGED ON THE CONFIRMATION DATE.

2.  The proposed distributions to be made under the Plan may differ from the actual distributions which are made for many reasons, including substantial variations in the amounts of allowed claims or the ultimate allowance of any Disputed Claim.

3.  The Debtor presently knows of no viable action for the avoidance of preferential transfers or fraudulent conveyance.

4.  Notwithstanding any provision in the Plan to the contrary, no payment will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order of the Court. Unless otherwise agreed in writing, if and once a claim that has been disputed becomes Allowed, payments to the holder of such Allowed Claim shall commence on the next regular date and any payments due to such holder under the Plan that were not made while the Claim was disputed shall be paid as additional periodic payments at the end of the term of payments for Allowed Claims in such Class.

5.  Discharge of the Debtor shall be governed by Section 1141(d)(5) of the Bankruptcy Code.  As of the Effective Date, and as except as otherwise provided in this Plan, any property of the Debtor not sold or liquidated as authorized under the terms of this Plan, shall be vested in the Reorganized Debtor free and clear of all liens, claims and interests of holders of Claims and Equity Interests.  Any Claim asserted in any fashion after the Confirmation Date by any Entity who received notice of this Bankruptcy Case prior to the Confirmation Date shall be disallowed, is discharged by the Plan, and shall receive no disbursements under the Plan.  The rights afforded in the Plan and the treatment of all Claims is in exchange for and in complete satisfaction of the Claims, including any interest accrued on such Claims from and after the Effective Date, against the Debtor or his assets.

6.  ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTOR, ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE REORGANIZED DEBTOR WITH RESPECT TO ANY SUCH CLAIM, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM.  SUCH

INJUNCTION SHALL EXTEND TO ANY SUCCESSOR OF THE REORGANIZED DEBTOR AND THEIR RESPECTIVE PROPERTIES AND INTERESTS IN PROPERTY.

7. The Hudson Street Property of the Debtor or the Reorganized Debtor sold pursuant to the terms of the Plan shall be sold free and clear of all liens, claims, encumbrances and security interests, with all liens, claims, encumbrances and security interests transferred to the proceeds of such sale as maintained in the Sale Escrow Account.

8. Once the Sale Escrow Account is funded, then the Reorganized Debtor as the Distribution Agent may commence the payment of Allowed Claims (either in full or, if insufficient proceeds were realized from the sale, on a *Pro Rata* basis), however, the Court may authorize earlier partial distributions, upon motion and notice to all creditors, interests, parties in interest, and a hearing, at all times reserving cash for the *Pro Rata* portions of the Disputed Claims in the event they become Allowed Claims.

9. All claims for Professional Fees or Professional Administrative Expenses Claims or for the Distribution Agent or its counsel are subject to review by the Court and shall be approved by the Court prior to my distribution being made by the Reorganized Debtor for such claims or expenses. The Court retains jurisdiction post-confirmation to approve such fees and expenses prior to disbursement.

## ARTICLE XIX. ACCEPTANCE OR REJECTION OF THE PLAN AND EFFECT OF REJECTION BY AN IMPAIRED CLASS

1. Each member of an impaired class of Claims that holds an Allowed Claim shall be entitled to vote separately to accept or reject the Plan subject ti the provisions set forth hereinbelow.

2. Except as provided in Section 1126(e) of the Bankruptcy Code, a class of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of that class that have timely and properly voted to accept or reject the Plan.

3. Any Entity holding two or more duplicate Claims shall be entitled to vote only one Claim.

4. Holders of Claims in impaired classes shall be entitled to vote if:

(a) Such Claim has been timely filed against the Debtor and there is no pending objection to such Claim;

(b) Such Claim has been timely filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, but only if and to the extent temporarily allowed for voting purposes by order of the Bankruptcy Court in accordance with Bankruptcy Rule 3018; or

(c) Such Claim has not been filed and is not listed as "disputed", "unliquidated" or "contingent" in the Debtor's bankruptcy schedules and the amount of such claim, as voted, is equal to or less than the amount listed for such Claim in the Debtor's bankruptcy schedules.

## ARTICLE XX. EFFECTIVENESS OF THE PLAN

Except as otherwise provided in the Plan, no payments of Claims shall be made pursuant to the Plan unless and until the following conditions shall have been satisfied:

(a)     The Confirmation Order shall have been entered onto the docket of the Bankruptcy Case and there shall not be a stay or injunction in effect with respect thereto; and

(b)     All releases, actions, documents, agreements and notes necessary to implement the Plan, including documentation necessary to close sales of property, shall have been effected or executed.

## ARTICLE XXI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND OBJECTION TO PROOFS OF CLAIM

1. The Debtor and any other party in interest will retain the right to object to Claims after the Confirmation Date and after the Effective Date in order to have the Bankruptcy Court determine the amount and treatment of any Claim.   Subject to further order of the Court, objections to Claims (including, but not limited to, any Claim arising from or relating to the rejection of any Executory Contracts) shall be filed with the Court and mailed to the holder of the Claim to which objection is made not later than one hundred twenty (120) days following the Effective Date or ninety (90) days after a Proof of Claim is filed, whichever is later.

2. No payment or distribution shall be made by the Debtor with respect to a Disputed Claim until it becomes an Allowed Claim.  Once a Disputed Claim becomes an Allowed Claim, the Allowed Claim shall be paid in accordance with Article IV or V hereinabove as applicable. Holders of Disputed Claims that become Allowed Claims shall be bound in all respects by the provisions of this Plan.

3. Debtor shall set aside and deposit sufficient funds from distributions for persons holding Disputed Claims in a separate "Disputed Claims Account", pending adjudication by the Bankruptcy Court of that Disputed Claim. Only at such time and to the extent that a Disputed Claim is disallowed by a Final Order shall those funds reserved and set aside for that Disputed Claim be made available for distribution to Allowed Claims in accordance with Article IV herein as applicable.

4. Any monies not disbursed on account of a claim that is disallowed by a final and non-appealable order shall be deposited back into the "Cash Escrow Account" utilized to pay Class 11 unsecured claims.

## ARTICLE XXII. RELEASES, TERMINATIONS AND SETTLEMENTS OF CLAIMS

1. Subject to the provisions of section 1141(d)(5) of the Bankruptcy Code, and except for the obligations imposed herein, the distributions and rights that are provided herein shall be in complete satisfaction, discharge and release of: (i) all Claims against, liabilities of, liens on, obligations of, and interests in the Debtor and the assets and properties of the Debtor, whether known or unknown, and (ii) all causes of action, whether known or unknown, against the Debtor or the successors and assigns of the Debtor based on the same subject matter as any Claim or based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date, that was or could have been the subject of any Claim in this Bankruptcy Case regardless of whether a Proof of Claim was filed, regardless of whether any such Claim has been allowed, and regardless of whether the holder of any such Claim has voted on the Plan.  Nothing in this paragraph is intended to act as a release of any obligations of any party other than the Debtor.

2. The classification of and the manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be a joint obligor with another Entity with respect to the same obligation, which in turn may give rise to a Claim for contribution or indemnification. All Claims against the Debtor based upon or having any benefit of any such joint liability shall be satisfied, discharged and released in the manner provided in the Plan, and Creditors shall be entitled to only one distribution, and no duplicative or multiple recovery, with respect to any underlying obligation of the Debtor.  Nothing in this paragraph is intended to act as a release of any obligations of any party other than the Debtor.

## ARTICLE XXIII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction post-confirmation and until the Plan has been fully consummated for all purposes herein and all motions filed with the Court post-confirmation, including, but not limited to the following purposes:

(a)     Classification of the claim of any creditor and the reexamination of claims which has been allowed for purposes of voting, and the determination of such objections as may be filed to creditors' claims. The failure by Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of Reorganized Debtor's right to object to, or reexamine the claim in whole or in part subsequent to confirmation;

(b)     Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation between Debtor and any other party, including but not limited to any rights of Debtors to recover assets pursuant to the provisions of Title 11 of the United States Code;

(c)     Correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of the Plan;

(d)      Modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code;

(e)      To enforce and interpret the terms and conditions of the Plan;

(f)      Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title rights, and powers as the Court may deem necessary;

(g)      Setting of fees and expenses of any professional involved in this proceeding, including the determination of the amount and reasonableness of any attorney's fees or costs claimed by any secured creditor on their claims in this proceeding;

(h)      Entry of an order concluding and terminating this case;

(i)      To consider and act upon the sale or transfer of any asset of the Debtor's estate;

(j)      Staying enforcement of any claims or liens until consummation of the Plan;

(k)      Determining disputes with respect to or concerning the validity and enforceability of any lien, mortgage or encumbrance against any asset of the Debtor, including the ranking of such liens and/or encumbrances, in any disputes with respect to the payment of such liens or encumbrances from the sales proceeds derived from any asset;

(l)      To hear, adjudicate and determine any objections to claims or interests post-confirmation that may be filed by the Debtor pre-confirmation or by the Debtor or the Reorganized Debtor post-confirmation to any proofs of claim filed by any creditor, equity interest holder or any other party in interest in this proceeding;

(m)      To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

(n)      To determine the terms for the rejection or assumption of Executory Contracts or for the assumption and assignment, as the case may be, of Executory Contracts to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom, including the determination of defaults required to be cured;

(o)      To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtor before, or by the Reorganized Debtor after, the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Debtor's Bankruptcy Case; including, but not limited to, (i) claims and causes of action arising from or related to the pre-petition activities of the Debtor, whether arising by statute or common law, whether arising under the laws of the United States, Louisiana, or any other state

28

having jurisdiction over any Claim or controversy, (ii) Claims, causes of action and other litigation that may adversely impact or affect the Debtor's Estate, (iii) contests to Claims, and (iv) proceedings involving offsets against Claims, and any proceeding to avoid any Lien on property of the estate.

(p)     To issue orders, determinations, and rulings regarding the valuation, recovery, disposition, distribution, operation, or use of the Debtor's property, including claims for damages of any type from any person, and whether initiated prior to or after the Effective Date;

(q)     To determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be commenced by the Debtor before or by the Reorganized Debtor after the Effective Date;

(r)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(s)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan, the Plan documents and agreements executed in connection therewith or any person's obligations under the Plan or any documents and agreements executed in connection therewith;

(t)     To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor;

(u)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order or the Effective Date.

(v)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(w)     To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

(x)     Notwithstanding any provision of the Plan to the contrary, to enforce, implement, and interpret any provision of the Plan.

## ARTICLE XXIV. MANAGEMENT AND ADMINISTRATION

After confirmation of the Plan, James Wheat shall operate the Reorganized Debtor.

## ARTICLE XXV. MISCELLANEOUS PROVISIONS

1. The entry of a Confirmation Order shall constitute a direction to and authorization of the Reorganized Debtor to take or cause to be taken any action necessary or appropriate to

29

consummate the provisions of this Plan, including but not limited to the Debtor or the Reorganized Debtor executing, delivering, filing or recording such contracts, instruments, releases, indentures and other agreements or documents and taking such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.  All actions taken and all documents executed by the Debtor pursuant to this Plan shall be taken or executed by James Wheat, who shall have full authority and approval of the Bankruptcy Court to take any action or execute any document on behalf of the Reorganized Debtor, including any and all acts of sale and related documents necessary to transfer title to the Hudson Street Property in accordance with the terms of the Plan.

     2. From and after the Effective Date, the Reorganized Debtor shall, subject to approval by the Bankruptcy Court, be obligated for and pay the reasonable fees and expenses of professional persons retained by the Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

     3. The Debtor may propose amendments or modifications of the Plan at any time prior to confirmation, without leave of court, on notice to any creditor or class of creditors affected by such amendment or modification.  After confirmation the Reorganized Debtor may, with Court approval, and so long as it does not materially or adversely affect the interests of creditors, remedy any effect or omission or reconcile any inconsistency in the Plan, or in the order of confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

     4. The Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns.

     5. Pursuant to Section 1146(a) of the Bankruptcy Code, under this Plan (1) the issuance, distribution, transfer or exchange of any debt, equity, security or other interest in the Debtor; (2) the creation, modification, consolidation or recording of any mortgage or other security interest, or the securing of additional indebtedness by any other means (whether (a) in connection with the issuance and distribution of any debt, equity, security or other interest in the Debtor, or (b) otherwise in furtherance of, or in connection with, the Plan); or (3) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any deeds, bills of sale, assignments or other instruments of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan, shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar tax or government assessment and the appropriate state or local government official or agent is directed to forego the collection of any such tax or government assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment. All deeds, mortgages, assignments, agreement and other instruments of transfer to be executed or deliver under this Plan in connection with any transfer of property or an interest in property shall be recorded or filed, as appropriate, in the appropriate recording office, and shall be free and clear of, and without the payment of, any and all stamp taxes or similar taxes pursuant to Section 1146 of the

Bankruptcy Code or any similar tax on the recording of mortgages or other security instruments imposed by the laws of the State of Louisiana or any other state, or any other political division thereof.

6. A failure by the Reorganized Debtor to make a payment to the Louisiana Department of Revenue pursuant to the terms of the Plan shall be an event of default. The Louisiana Department of Revenue shall give the Debtor written notice thereof, with a copy to the Debtor's counsel, and the Debtor may cure such default within twenty (20) days from the receipt of such notice. If the Reorganized Debtor fails to cure an event of default within twenty (20) days after receipt of written notice of default, then the Louisiana Department of Revenue may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies allowed under applicable state law; and/or (c) seek such relief as may be appropriate in the Bankruptcy Court.

7. THE DISCLOSURE STATEMENT AND THE PLAN SHOULD BE READ IN THEIR ENTIRETIES. IN THE EVENT THAT THERE IS A CONFLICT IN ANY PROVISION OR TERM IN THE DISCLOSURE STATEMENT AND THE PLAN, THE TERMS AND PROVISIONS OF THE PLAN TAKE PRECEDENT AND ARE CONTROLLING. IN THE EVENT OF A CONFLICT OF ANY TERM AND PROVISION IN THE DISCLOSURE STATEMENT OR THE PLAN WITH ANY TERM OR PROVISION IN THE ORDER ENTERED BY THE U. S. BANKRUPTCY COURT CONFIRMING THE DEBTOR'S PLAN, THE TERMS AND PROVISIONS OF THE U. S. BANKRUPTCY COURT ORDER CONFIRMING THE PLAN TAKE PRECEDENT AND ARE CONTROLLIING.

## ARTICLE XXVI. LITIGATION

1. The suits on behalf of and against the Debtor are listed in the Schedules and Statements. If any litigation pending at the time the petition herein was filed is resolved by settlement or judgment adverse to the Debtor, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor and shall share in disbursements as a member of Class 11, but only in and to the extent that disbursements are made from and after the date of the settlement or the date on which a final judgment is rendered.

2. If any litigation pending at the time the petition herein was filed or initiated post-petition by Debtor is resolved by settlement or judgment in favor of the Debtor, the sums received shall be utilized to fund the Plan.

3. There are no known preferential transfers or fraudulent conveyance actions to be initiated by the Debtor or the Reorganized Debtor.

## ARTICLE XXVII. CLAIMS WITH RECOURSE TO INSURANCE COVERAGE

All allowed general unsecured claims with recourse to insurance coverage policies of the Debtor covering tort claims shall be referred to the Debtor's insurer for initial payment. The Debtor's insurer providing applicable coverage for the claim in question, in the event an adverse judgment is rendered against the Debtor with respect thereto, shall pay these claims. In the event

31

that a claim entitled to coverage under insurance policy of the Debtor is not satisfied, in whole, or in part, under such policy, such claim shall be treated as the holder of a Class 11 general unsecured claim in the Plan, and shall receive a distribution on its claim as set forth in the provisions contained in Article IV of this Plan, with respect to the payment of Class 11 claims. Debtor will reserve a sufficient amount to cover the deductible due its insurer for any claims with recourse against its insurers.

## ARTICLE XXVIII. POST-CONFIRMATION PROVISIONS

1. Nothing in the Plan shall be construed to prohibit Debtor or the Reorganized Debtor from objecting to any claim or lien after confirmation of the Plan.

2. The Reorganized Debtor shall act as disbursing agent for payments to creditors under the Plan.

3. On and after the Effective Date, Debtor may operate her business and may use, acquire, sell, and dispose of its property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Court or Bankruptcy Rules, other than as expressly provided herein.

4. All property of the Debtor, including pre and post-petition claims and/or causes of action which existed in favor of the Debtor, shall vest in the Reorganized Debtor free and clear of the claims, liens, charges, encumbrances and interests, except as specifically set forth in the Plan.

5. Notwithstanding any provision in the Plan to the contrary, no payments or distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order.

6. On or prior to the Confirmation Date, pursuant to §502 of the Bankruptcy Code, the Bankruptcy Court will fix or liquidate the amount of any contingent general unsecured claim not otherwise treated in the Plan, in which event the amount so fixed or liquidated will be deemed the allowed amount of such claim for purposes of the Plan, or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent amount for such claim, which amount will be the maximum amount in which such claim ultimately may be allowed under the Plan, if such claim is allowed in whole or in part.

7. The right of a Creditor under §502(j) of the Bankruptcy Code to obtain reconsideration of a claim that has been estimated can only be exercised within thirty (30) days after the Effective Date.

8. All proofs of claim with respect to claims arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the Order previously entered by the Bankruptcy Court approving Debtor's Motion of Debtor-In-Possession for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof. Any claims not filed within such time will be forever barred from assertion against the Debtor, the estate and her property.  Unless otherwise ordered

by the Bankruptcy Court, all such claims arising from the rejection of executory contracts or unexpired leases will be treated as Class 11 claims.

## ARTICLE XXIX. DEBTOR'S REQUEST FOR CONFIRMATION PURSUANT TO 11 U.S.C. § 1129(b)(1)

Debtor, as the proponent of the current Plan, hereby requests and hereby gives notice of its intent to invoke the provisions of Section 1129(b)(1) of the Bankruptcy Code in order to seek confirmation notwithstanding the requirement of subparagraph 8 of Section 1129(a) of the Bankruptcy Code.

## ARTICLE XXX. EFFECTS OF CONFIRMATION

1. Except as otherwise provided in the Plan, on and after the Effective Date, the terms of the Plan shall bind all holders of claims and equity interests, whether or not they accept the Plan.

2. Except as otherwise provided in §1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to the Plan will be in full and final satisfaction, release and discharge as against the Debtor and any of its assets, of any debt that arose before the confirmation date and any debt of a kind specified in §§ 502(g) or 502(i) of the Bankruptcy Code and all claims and interests of any nature, including, without limitation, any interest accrued thereon from and after the petition date, whether or not (i) a proof of claim or interest based on such debt, obligation or interest is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such claim or interest is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of such claim or interest has accepted the Plan.

3. Except as set forth in the Plan, on and after the Effective Date, every holder of a Claim or Equity Interest shall be precluded and permanently enjoined from asserting against the Debtor or the Reorganized Debtor, any further claim based on any document, instrument, judgment, award, order, act, omission, transaction, or other activity of any kind or nature that occurred prior to the confirmation date.

4. Except as otherwise provided in the Plan, the payments and distributions which are required to be made by the Reorganized Debtor under this Plan shall be in full and final satisfaction, settlement, release and discharge of all claims against the Debtor and/or the Reorganized Debtor.

5. Except as otherwise provided in the Plan, effective upon the Effective Date, all notes, certificates and other evidences of claims shall represent only the right to participate in distributions under the Plan.

6. Except as otherwise provided in the Plan, Debtor is authorized to sell the Hudson Street Property free and clear of all liens, mortgages, privileges and encumbrances, pursuant to Section

363(f) of the Bankruptcy Code, with the claims of any lien holders encumbering such assets attaching to the sales proceeds derived from such asset.

7. Except as otherwise provided in the Plan, upon the Effective Date, Debtor and/or the Recognized Debtor is authorized to file with this Court, post-confirmation, a rule to rank any liens recorded against any of its assets sold pursuant to this Plan, and to have a determination made by the Bankruptcy Court as to the ranking of such liens and/or encumbrances against such sale proceeds, including the disbursement of any sales proceeds to such lien.

8. Only those creditors that timely file a proof of claim in this case with the United States Bankruptcy Court/Clerk of Court will be considered the holder of an allowed claim for inclusion for payment under this Plan. Debtor and/or the Reorganized Debtor reserves the right to object to the allowance of any claim post-confirmation, and the Bankruptcy Court retains jurisdiction, post-confirmation to adjudicate such objections to claims as may be filed by the Debtor.

9. Subject to further order of the Bankruptcy Court, all applications for payment of administrative claims pursuant to Section 503(b) of the Bankruptcy Code (other than administrative claims that constitute the request for the fees of attorneys or accountants for the Debtor-in-possession, or for governmental taxing agencies) shall be filed with the Bankruptcy Court within thirty (30) business days after the Effective Date. Any request for payment of such administrative claims not so scheduled by the Debtor or filed within such time period shall be discharged and forever barred, except as otherwise may be ordered by the Bankruptcy Court.

10. Except as set forth herein, on and after the Effective Date, every holder of a claim or equity interest shall be precluded and permanently enjoined from asserting against the Debtor or the Reorganized Debtor any further claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred prior to the confirmation date.

## ARTICLE XXXI. THE PLAN SHALL TERMINATE UPON COMPLETION OF ALL PAYMENTS

The Plan shall terminate upon making the final disbursement as set forth in Article IV hereinabove.

## ARTICLE XXXII. TAX CONSEQUENCES OF THE PLAN

Neither the Debtor nor his counsel assumes any responsibility in connection with the tax liabilities of recipients under the Plan. Recipients are urged to obtain advice from their own tax counsel regarding the applicability of state and federal tax laws and the tax effect of any payments they may receive hereunder. At present, Debtor does not anticipate any material adverse tax consequences as a result of the implementation of this Plan. In the event of a sale of the Debtor's Hudson Street Property these taxes shall be paid from Sale Escrow Account #1 after any payments of Secured Claim, Administrative Expenses and Priority tax claims.

The Debtor is not requesting a ruling from the Internal Revenue Service with respect to any of the tax aspects of the Plan, and the Debtor has not obtained an opinion of counsel with respect thereto.  Each holder of a claim or interest affected by the Plan should consult his or her own tax advisor regarding the specific tax consequences of the Plan with respect to that holder's claim or interest.

## ARTICLE XXXIII. MODIFICATION OF PLAN

1. The Debtor may propose amendments or modifications of the Plan at any time prior to confirmation, without leave of court, on notice to any creditor or class of creditors affected by such amendment or modification.  After confirmation the Reorganized Debtor may, with Court approval, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission or reconcile any inconsistency in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

2. The Plan, as modified, is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein. Parol evidence, including previously proposed but unconfirmed plans or drafts thereof, shall not be admissible in an action regarding the Plan or any of its provisions.

Dated: June 23, 2014.                    Respectfully submitted,

                                        /s/ Darryl T. Landwehr
                                        DARRYL T. LANDWEHR (#17677)
                                        LANDWEHR LAW FIRM
                                        1010 Common Street, Suite 1710
                                        New Orleans, Louisiana 70112
                              Telephone: (504) 561-8086
                                        Attorneys for James B. Wheat


                                         /s/ James B. Wheat
                                        James B. Wheat, Debtor

35